We have four argued cases today and one submitted case. And our first argued case is number 2008-1324, CALICO v. AMERITEK. Mr. Trojan. Good morning, Your Honors. The pleas of the Court, my name is Joseph Trojan. I'm counsel for CALICO BRAND's bank appellate. This is an appeal from a damages trial in which the jury found that the infringement was willful. The district court took away that finding on a JMOL motion. We are appealing that decision. In this particular case, the first prong of Seagate is undisputed. The conduct was objectively reckless. Can I ask you just to be clear on what the play is here? The district court, are you making a distinction between the several million lighters that were sold before the October notice letter in 2004? Are you drawing a distinction between what was sold before that and what was sold after that? Or are you saying that everything is treated the same? No, no. I think it absolutely has to be treated differently. I think that the case that's on point on that is Golightly v. Walmart that we cited. That was a case in which Walmart received notice of the infringement after it had already been selling. It then tried to get the manufacturer to simply indemnify it and do the analysis, just as we have here. So are you suggesting that you have a different or a stronger case on willfulness with regard to the $75,000 lot than you do to the prior? Because the district court judge didn't – my recollection is he didn't seem to draw distinctions between the two necessarily, right? He seemed to be talking really about the pre-October 2004 infringement. Well, I think the district court was focused solely on whether at the time the infringement began, whether he was aware – whether ACME was aware of the infringement or not, whether they were aware of the patent. They didn't receive notice until later. Do you agree that with respect to the sales before the notice that there could be no finding of willful infringement? I would have to concede that. Okay, so we're talking about the sales after the notice. That's correct. Right. And with respect to those sales, my understanding is there's a dispute as to whether they actually took place or not and that that's basically the issue. No. No? No. The sales – there was no dispute as to the fact that the sales occurred. In fact, because if that was true, then they would be challenging the actual calculations of damages. Wait, wait, wait. On this appeal, they say you didn't prove that any sales took place after the notice and you say we did. That's the issue. Correct. No, the issue – we have definitely shown that the – No, that's the question as to whether you've definitely shown that. That's what the dispute is about as to whether you've shown it or not shown it. Right? Well, the district court – No, answer my question. Isn't that what the dispute is about on the appeal as to whether you've shown that there were sales after the notice or whether you haven't shown? The – I think that that may be an aspect of what the appeal is about. But the focus of the willfulness issue is – But you can't – you don't have any willfulness claim if there were no sales after the notice, right? Correct. Okay, so the question is whether there were sales after the notice. Correct. Okay, so – and that seems to turn on this document, this lot tracking report, right? Correct. And what that showed. Correct. And my understanding is that the only testimony about that document was by the president of the company who said, I don't know what that document means. No, he did say that he knew what that document was. He said it was produced from their computers and it showed the sales and the only sales that occurred for that lot tracking number were the utility lighters. He did not say that they were the infringing lighters. He said he didn't know whether they were or not. At that particular time, there were no other utility lighters being sold. How do we know that? Because there's no evidence what – because the only thing that was ever discussed at trial, including their own expert discussing the damages, involved those lighters being the infringing lighters. So there was never any dispute that that lot tracking document covered the accused lighters because there was – There was no testimony by anybody who was familiar with the document that that document showed the sale of infringing lighters. It – the only lighters being sold at that particular – Is my statement correct or not correct? Is there testimony – I disagree, Your Honor. Well, you may disagree, but – wait, don't interrupt me. Is there testimony by someone familiar with the document that it showed the sale of infringing lighters? Yes. Who? By the president of the company. Where? It – he discussed it. Page. He discusses it in two places. Doesn't the president say, I don't know, you're going to have to ask the CFO that question? Well, then we followed up. And there's – the way that we know that those were infringing sales was because they concede that they used to sell a different lighter. And then after they got notice of the infringement, they then still went and bought a different lighter. But the lighters that were in inventory at that particular time were the infringing lighters. There was no – Where is the testimony that he said that these lighters shown or these items shown were the infringing lighters? I don't – I read his testimony. I don't see where he says that. He did not expressly say that those are the Ameritech lighters. That is correct. But it's reasonable – that was a reasonable inference because no one was suggesting at trial that they were not the Ameritech lighters, that there were any other lighters that were being sold at that particular time. If they had been selling other lighters at that particular time, that would have been a huge issue. But the only time they talk about when they were selling other lighters was years before in the early 90s. They said they used to sell. Well, suppose it was just leftover inventory from the sales from years before that they had on hand, and that's what that lot document signifies. Well, the lot document indicates the same product that – Utility lighters. Right, right. And the only utility lighters they were selling at that time were the Ameritech lighters. There was no testimony at all. We know that. Did somebody say that that was the case? Well, we can infer that from the fact that this was the – that they said that they bought other lighters before and they bought other lighters after. But they didn't buy any lighters – anyone else's lighters during. They didn't say that, though. Well, if you say that you bought before and you bought after – Where's that testimony? I don't have that quickly at hand, Your Honor. I can provide a supplemental brief on that if you'd like. But that's – and I believe we do – the counsel, you know, even ACME has cited the testimony in its reply brief identifying its statement. Look at JA-246. Okay. It's line 7. And during the period from when you began, when you purchased utility lighters from Ameritech in 2003 until October 2004, did you buy utility lighters from anyone else? Yes. Who did you buy them from? NLS or something like that? That seems to indicate that sales of both the accused lighters and other lighters. Wouldn't you agree? Correct. I would look at the testimony beyond that because that particular issue was – the damages were calculated based upon including those lighters. So there was never literally at trial – the counsel never objected whatsoever to the fact that the total number of lighters in the total damages calculation. So, I mean, people make damages calculation on the hypothetical that you're correct. But that doesn't excuse you from establishing the basic fact that infringing lighters were sold after the notice here. And the problem is you haven't been able to point us to any testimony that states – that supports the proposition that infringing lighters were sold after the notice. Let me go back to my first point about what the willfulness goes to. Do you agree that assuming the verdict with respect to damages were upheld, that since you're only alleging willfulness with respect to a small percentage of those lighters that were actually sold, any enhanced damages you would be entitled to, even if we were to agree with your position on willfulness, would be just a very small portion of the overall award? That's true, but it's also – there would also be an issue of whether attorney's fees would be awarded and so whether the willfulness could be a basis for attorney's fees. Because the real heart of the thing – the issue here is that ACME chose – actively chose to put this off onto a Chinese distributor that went bankrupt. And so that's really the heart of it because when you look at – when you look at the letter on November 2nd that counsel – I mean the president of ACME sent, which is located at JA120, he specifically says, with regard to the present invention being held by ACME International, Ameritech will provide a reasoned basis for its position that the products purchased by ACME International from Ameritech do not infringe any claim of either patents asserted by Calico. So before he sold the additional lighters, he knew that he needed the reasoned basis. He knew that was the law. And why did he not go and get a basis on his own? Because he says at JA133 that he's not required – that it's not their policy. But you don't do anything to find out whether you were infringing, correct? That would be correct. And so – That's a problem if he sold additional lighters. It's not a problem if he didn't. And that would – I have to concede that would be true, Your Honor. I just believe that the totality of the record does establish that when you read the entire record that no one was contending at trial that those were not the lighters that were being sold, that those weren't Ameritech lighters. You're getting into your rebuttal time here. Do you want to say that? Good morning, Your Honor. May it please the Court? The Court has seized on the real issue on willfulness here, and the district court got this one exactly right. The reason we're having this debate over a lot-tracking document is that at trial the plaintiff's position was that all ACME sales, including pre-notice sales, were the subject of a claim for willful infringement. That's the way I read the district court's opinion. There wasn't a lot of distinction between pre- and post-notice. Exactly, Your Honor. And that's because that was what the plaintiffs argued. So there's some colloquy with the court at JA 208 to 210 where the court was testing the plaintiff's theory of willfulness against our client ACME and saying, I'm not seeing a whole lot of there there. And what counsel for the plaintiff said is, our position is that ACME buried its head in the sand. It was willful indifference, almost sort of the underwater devices standard that we moved away from a long time ago. So their theory at trial did not distinguish between pre- and post-notice sales. That issue was raised for the first time on appeal. And as we noted in our appeal brief, it was for the first time in the proceedings before this court on appeal that the plaintiffs started citing this one-lot tracking document as evidence that there were some deliberate sales after ACME was put on notice of infringement. And Your Honor, Judge Rainey, you pointed to precisely the page that I would have called to the court's attention, JA 246, where when our client's representative was asked whether he could tell which lighters were being sold during a particular time period, he said no. Would it matter if, let's say, just four of those lighters, of the 74,000, were infringing? I guess you might then have an issue of de minimis willful infringement, Your Honor. I'm not sure that we've seen that sort of breakdown in the case law. But I would suggest that there's no evidence in the record to support any notion that there was anything that my client— What about the November 2nd letter? The November 2nd letter, Your Honor, I think is evidence. And if you look at the—we're really focused now on the subjective prong of the Seagate test, which is my client now has notice, and what is their response after realizing that there's an allegation or a potential allegation of infringement? They received a call from plaintiff's counsel in October 2004. They received a cease and desist letter on October 22nd, 2004. At some point between October 22nd and November 2nd, my client called Ameritech, the manufacturer, and said we have this notice. And the November 2nd letter is confirming that phone call where we not only confirm that we're entitled to indemnity, both under the UCC and under express contractual agreement, but my client's demanding that Ameritech prove, demonstrate to its satisfaction that the products don't infringe. And what my client said very clearly in that November 2nd letter and in its follow-on letter is, if you can't prove that to me, you're taking the stuff back. And that's ultimately what happened. So in the space of several weeks after being first put on notice that a patent existed and there was an allegation of infringement, my client was in contact with its manufacturer demanding assurances of non-infringement. And when those assurances were not forthcoming, it returned all inventory. I'm not sure under any reasonable standards of commerce— Or to a retailer. To Ameritech, Your Honor. To Ameritech. So Acme as a reseller, we purchased this particular batch of lighters from Ameritech. And the November 22nd letter, which is a JA-122, confirms what happened, which is that Ameritech, the manufacturer, agreed to refund our cost for all the lighters and inventory. We agreed to hold them and ship them back to Ameritech once the matter was resolved. But we immediately ceased sales, demanded assurances of non-infringement, and demanded a refund and returned the inventory once those assurances were not forthcoming. So under the circumstances, when we're looking at the subjective prong of the Seagate test, it was clear even in Seagate, as Judge Newman pointed out in her concurring opinion and the majority made clear, you assess the willfulness test under, among other things, reasonable standards of commerce. The district court, I think, correctly held it's not reasonable to assume that an aggregate reseller of thousands of products is going to be doing freedom-to-operate opinions on each and every product that they purchase from a manufacturer. That in a case like this— Nobody's contending at this point that there is such an obligation. Right. Why don't you turn to the lost profit issue? Absolutely, Your Honor. On this one, unfortunately, the magistrate judge, I think, wrongly submitted issues to the jury that should not have been submitted. And then upon getting back from the jury, the factual findings that they made did not undertake the full test he was supposed to make. Before you get into the merits of whether or not there should have been lost profits or not, do you agree—I mean, the jury came back with reasonable royalty and lost profits. And I guess the parties had some stipulation because obviously the other side would rather go with lost profits than reasonable royalty. If we were to agree with you in terms of the lost profits being problematic in these circumstances, would they at least be left with reasonable royalty? I mean, where's the reasonable royalty piece of this jury trial? Yes, Your Honor. If the court concludes as a matter of law, de novo, that lost profits were not an available remedy, we agree. Reasonable royalty was available. The jury found a reasonable royalty rate of 3 cents per unit. We can do the math. Why isn't market share enough? Is that your read of the district court's view, is that market share is sufficient to at least create the presumption, and why is that wrong? That's exactly the issue, Your Honor. I think market share is enough to create a rebuttable presumption, perhaps. But under grain processing and microchemical versus lextron, it's only a rebuttable presumption. And then the burden shifts to my client, to ACME, to prove that the plaintiff's claim of but-for causation is nevertheless unreasonable. And what the district court here did, what the magistrate did, is submitted to the jury for factual findings, the various issues relating to lost profits. And on the J. Mull ruling, the district court, the magistrate went through the four Panduit factors and found that the plaintiff had made its showing under each of those four Panduit factors. But then never went to the second part of the test to address, in any respect, the rebuttal evidence that we had put on it. So what's your best rebuttal evidence? Your rebuttal evidence goes to then you agree that you had to show that the purchases were for something other than the patented invention? The rebuttal evidence, and actually an earlier district court judge who had this case, I think, teed the issue up perhaps the right way, which is in the December 2006 ruling finding the patents valid on summary judgment, the district court also considered the parties had cross-moved for summary adjudication of whether lost profits were available. And what the district court said there was, as to my client, Acme, he concluded there was one specific factual issue that to his thinking was unresolved, which is whether he agreed, and it was undisputed, that we had non-infringing alternatives available immediately once put on notice of infringement. What he said he did not know is if we had non-infringing alternatives available throughout the period of sales of infringing products. He said that was an open issue, and that's why he was prepared to let it go to the jury. When the magistrate judge took the case back after the trial, he really didn't go back to that framework. He just went back and applied the Panduit factors. As to the second factor, the absence of non-infringing alternatives, he said, well, the plaintiffs have argued a market share theory, and that can be sufficient to show the absence of non-infringing alternatives. I think, if I understand correctly, you're missing one crucial point, and that is not only were there non-infringing alternatives available, but my understanding is that it's now undisputed that the consumers didn't distinguish between the non-infringing alternatives and the infringing products. Correct, Your Honor. And I apologize, I haven't quite gotten there yet, but that's exactly right. So the undisputed evidence that finally came back at trial is that since the year 2000, all utility lighters had child safety mechanisms by law. That's the patented feature claimed in each of the asserted patents and suits. The undisputed evidence is that consumers didn't know or care about the differences between and among the different features of lighters. They were interchangeable. They were interchangeable not only to the ultimate individual retail consumers, but also to ACME and to the retailers to whom it sold its products in aggregate. And that throughout the period, and specifically going back to JA246, our president testified clearly that he was buying both Ameritech lighters and non-infringing lighters from a company called NSL throughout the infringing period. So the testimony at trial answered the question, the one open question that the district court in 2006 had said precluded his deciding on a matter of summary adjudication whether lost profits were available. So once that testimony came in at trial, and frankly I think it probably could have still been done at a summary basis before trial because the evidence was unrebutted. But once the evidence came back at trial, again the magistrate judge walked through the plaintiff's case in chief and decided that they had met each of the elements. But he never addressed at all the rebuttal evidence that we put in. We were entitled to rebut the plaintiff's claim of but-for causation, again under grain processing and microchemical. And the magistrate judge made no findings whatsoever as to whether that rebuttal evidence was sufficient to overcome the presumption. And we believe on the record that was established, that is the only reasonable conclusion that can be made. There's another material problem I think with what the magistrate did, which is he never distinguished in assessing the availability of lost profits between Ameritech, the manufacturer of lighters, who at least arguably was the direct competitor with the plaintiff, and my client Acme. My client Acme is an aggregate seller of goods. We purchase lighters from a bunch of sources. Never purchased them from Calico before, but we purchased from a bunch of sources. And to our customers, we sell our customers bulk shipments of products. If you go into, I guess not linens and things anymore, but a Bed Bath and Beyond and you see a whole shelf of egg beaters and whisks and timers, we sell all that stuff in bulk, including the utility lighters. That's how our customers purchase from us, and that's in the record. There's no evidence, Calico presented no evidence, that either Acme would have purchased lighters from Calico in the absence of the infringing Ameritech lighters, or that our customers, who were used to buying from us utility lighters shipped in the big box. Your theory is that if you hadn't sold the infringing lighters, you would have substituted non-infringing lighters. Exactly, Your Honor. There's no reason why our customers would all of a sudden have gone to a different seller to buy utility lighters independently. Is there any evidence about the price of the infringing lighters versus the non-infringing lighters? I believe they were interchangeable, Your Honor. In terms of price? Yes. So there's no evidence that we would have done anything different. In fact, again, on JA246, we made clear we were buying non-infringing lighters throughout. When we got notice of infringement, it was a matter of weeks before we just wrapped up the Ameritech shipment and went back to our other seller. Did I hear you correct that all the utility lighters on the market at that time had child restraint devices on them? Yes, Your Honor. That was a law that was passed in 1999 and went into effect in the year 2000. I can give you a record site for that, if you'd like. But that evidence is in the record. JA158 and 168. Thank you. All right, you're in your rebuttal time. Do you want to say that? I would like to say that, Your Honor. Thank you. There is no evidence whatsoever that there was any non-infringing lighter that they went to. They never introduced what this lighter was, why it was non-infringing, or anything like that. So at trial, they were just assuming that they had this alternative product. There wasn't any evidence about an alternative product selling at the same price? Other than the conclusory statement that they had that was available. But there was never anything other than that. And so at the very least, they needed to introduce evidence that showing, yes, this product is an acceptable substitute. As far as showing that people bought for other reasons, this argument that suddenly came up on appeal, that people bought all these products as being interchangeable. Mr. Knapp, who is Vice President of Marketing at Calico, testified as to the unique characteristics of the product. Why people bought it. Why it sold in the millions. Why it kept on increasing in sales. Where is that testimony? It would be in, I could not find it as I was flipping through the table. You're supposed to know this record. That's why, one reason you're here is to help us find this stuff. Correct. But the issue that somehow that Mr. Knapp, the testimony is in the trial record with respect to that particular issue. We did not consider that a central issue in this particular appeal. But I understood from your briefs on appeal that you didn't dispute that there were non-infringing alternatives, nor did you dispute that consumers didn't distinguish between the non-infringing alternatives and the infringing product. With respect to non-infringing alternatives, yes, there are non-infringing alternatives. That's why we use the market share analysis. That's what you're supposed to do. And you agreed in your brief that the consumers don't distinguish between the infringing and the non-infringing product, right? Whether the product they had available to them was non-infringing is not in the record. Whether the product they had available would be unacceptable to consumers is not in the record. No, but you're not answering my question. My question is, did you not in your brief concede that the non-infringing alternative that was available at that time was, from the point of view of the consumers, just as good, interchangeable? Right. I do not believe we conceded that in our brief. Where did you argue to the contrary? I would have to go review the brief. May I just make one last statement? I know my time is up. With respect to whether the 74,000 units sold women and things, that's contained in JA 247 to 251, in which Mr. Mills testified that that document contained the infringing sales. And there was no objection to that, the admission of that evidence. And if there had been an objection on the basis of how – I'm sorry, this is – we're back to the willfulness issue. Correct. And you're pointing us to JA 249 – 247 to 251. Okay. And that if there – when that exhibit was admitted, if there had been an objection that that was not what Mr. Mills said it was, which was the infringing lighters, then we could have had the opportunity to – Who's Mr. Mills? He is an expert in the case. Who's expert? Our expert. Where does he say that there are the infringing – where does he say it's the infringing lighters? It says – where did – this – it's – then look at the next exhibit, 706. What page are you on? You're on page 250, line 15. Right. Can you – it's on 250, starting at line 15. Then look at the next exhibit, 706. Yes, can you tell me what this is? This is the number of sales that were made by Acme, and why did you determine this figure? I was – it was – I was asked to calculate damages caused by both Ameritech and Acme, and Acme represents only a portion of the sales. Then it goes on – So where does he say that this lot tracking device shows infringing lighters? Well, it's – in our brief, it's on page 8, and it says, where did you get this data? This came from the log tracking report that was produced by Acme. Wait, I'm sorry. Your belief – Right, we were quoting from – Are you talking about your blue brief? No, from the yellow brief. And it cites 244 to – no, for that it cites 247 to 251. Okay. I think we get your point. Mr. Trojan. Thank you. Just very briefly, I don't think I have much to add other than what's already been done. But first, there was a question made as to whether – and actually, this may really be the only point. There was a question as to whether the plaintiffs admitted or conceded that the lighters were interchangeable to consumers. That testimony came from the plaintiff's representative at JA 169 to 170, where he admitted that he was not aware of any basis on which consumers differentiated between his lighters and BIC lighters and Scripto lighters and all of the other lighters on the market. And again, the unrebutted testimony was that throughout the period of accused infringement, my client purchased lighters not only from Ameritech but from a host of other suppliers, including the one that got called out by name, NSL, which plaintiffs have never accused of being an infringing product. Okay. Thank you very much. Thank you, Your Honor.  The case is submitted.